JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
DEREK R. FLORES (Cal. Bar No. 304499)
Assistant United States Attorney
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4896
    Facsimile: (213) 894-0141
    Email:   derek.flores@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>ALBERT BENJAMIN PEREZ, JR.,<br>  aka "Dragon,"<br><br><br>       Defendant. | No. 2:16-CR-00729-JAK<br><br>GOVERNMENT'S BRIEF REGARDING DEFENDANT'S SPEEDY TRIAL AND DUE PROCESS RIGHTS |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Derek R. Flores, hereby files this brief regarding defendant Albert Benjamin Perez, Jr.'s Speedy Trial and Due Process rights.

     This brief is based upon the attached memorandum of points

//

//

//

and authorities, the files and records in this case, and such further
evidence and argument as the Court may permit.

Dated: January 30, 2025          Respectfully submitted,

                                 JOSEPH T. MCNALLY
                                 Acting United States Attorney

                                 LINDSEY GREER DOTSON
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 _____
                                 DEREK R. FLORES
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   FACTUAL BACKGROUND...........................................2

III.  CASE HISTORY.................................................4

      A.    2016-2017: Defendant Is Detained Pending Trial in 2016
            and Pleads Guilty in 2017..............................4

      B.    2017-2022: Defendant Withdraws from his Guilty Plea
            and a New Speedy Trial Clock Starts; the Court
            Continues the Trial and Makes Findings of Excludable
            Time...................................................5

      C.    2017-2025: Defendant Requests to Continue the Trial
            and the Court Makes Findings of Excludable Time........6

      D.    2020-2022: Pandemic-Related Court Closures, Defendant
            Is Released on Bond, and Defendant Is Re-Detained......7

      E.    2023-2025: Proceedings to Determine Defendant's
            Competency.............................................8

IV.   DEFENDANT'S DUE PROCESS AND SPEEDY TRIAL RIGHTS HAVE NOT
      BEEN VIOLATED................................................8

      A.    There Have Been No Speedy Trial Act Violations in this
            Case...................................................9

      B.    Defendant Has Not Asserted his Speedy Trial Rights and
            Has Stipulated to the Continuances in this Case.......10

      C.    The Delay in this Case Has Been Justified.............11

      D.    Defendant Has Not Been Prejudiced.....................12

V.    CONCLUSION..................................................14

1

2                          **TABLE OF AUTHORTIES**

**CASES**                                                    **PAGE(S)**
3

Barker v. Wingo,
4    407 U.S. 514 (1972) ........................................ 8, 9, 10

5
United States v. Antoine,
6    906 F.2d 1379 (9th Cir. 1990) ................................... 12

7   United States v. Baker,
     63 F.3d 1478 (9th Cir. 1995) ..................................... 9
8

9   United States v. Carter,
     754 F. App'x 534 (9th Cir. 2018) ............................... 10
10

11  United States v. Mendoza,
     530 F.3d 758 (9th Cir. 2008) ............................ 10, 12, 13
12

13  United States v. Nance,
     666 F.2d 353 (9th Cir. 1982) ..................................... 8

14  United States v. Olsen,
     21 F.4th 1036 (9th Cir. 2022) ................................... 11
15

16  United States v. Turner,
     926 F.2d 883 (9th Cir. 1991) ................................... 10

17  **STATUTES**

18  18 U.S.C. § 922.................................................. 4

19  18 U.S.C. § 924............................................... 4, 5
20

21  18 U.S.C. § 1959................................................ 5

22  18 U.S.C. § 1962................................................ 5

23  18 U.S.C. § 3161............................................ 5, 12

24  21 U.S.C. § 841................................................ 3

25  Cal. Health & Safety Code § 11351............................... 2

26  Cal. Penal Code § 29800(a)(1)................................... 2

27  U.S. Const. amend. VI.......................................... 8

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Albert Benjamin Perez, Jr. ("defendant"), a multiple-time felon, is charged in a superseding indictment in this case with distributing methamphetamine, possessing with intent to distribute methamphetamine, possessing with intent to distribute heroin, possessing a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm and ammunition. These charges carry a mandatory minimum sentence of 15 years' imprisonment and a statutory maximum sentence of life imprisonment. Defendant was detained pending trial in 2016 but was released on bond in 2021. In 2022, defendant violated his conditions of pretrial release and has been detained since then.

The Speedy Trial Act clock in this case originally started on November 2, 2016, when defendant made his initial appearance, but was reset to November 13, 2017, when this Court granted defendant's motion to withdraw from a guilty plea. Defendant had requested to withdraw from his guilty plea, over the government's opposition, because he had been indicted in the District of Nevada after he pled guilty in this matter.

Defendant's Speedy Trial and Due Process rights have not been violated because defendant requested and stipulated to each and every continuance in this case, which this Court granted, to the current trial date of July 29, 2025. In those requests, defendant and his counsel requested the continuance on multiple grounds, including because counsel needed additional time to investigate the case, review the discovery and evidence, and prepare for trial in the event that a pretrial resolution did not occur.

Additionally, between 2017 and 2020, defendant was pending trial in the Nevada case, which involved more serious charges and whose trial estimate was much longer than this case. As a basis for his continuance requests, defendant also noted that he needed time to prepare for the Nevada trial. A few weeks after defendant was acquitted in the Nevada case after a 77-day trial in February 2020, the Central District of California suspended all jury trials for more than a year in March 2020 in response to the COVID-19 pandemic.

Competency proceedings in this case have also been ongoing since January 13, 2023, when this Court granted defendant's request for a competency hearing. At the September 2023 competency hearing, the government argued that defendant was competent, but defense counsel requested a further neuropsychological evaluation, arguing that such an evaluation would demonstrate the purported competency concerns. The Court granted that request and defense counsel is in the process of having an outside evaluator conduct that evaluation of defendant.

Accordingly, defendant's Speedy Trial Act and Due Process rights have not been violated because (1) each of the trial continuances in this case was requested by defendant, supported by the Speedy Trial Act, and ordered by this Court, (2) defendant has not asserted his Speedy Trial rights, (3) the delays in this case have been justified, and (4) defendant has not been prejudiced by the delay.

## II.  FACTUAL BACKGROUND

Defendant has multiple prior California state felony convictions, including 2014 convictions for possessing a controlled substance for sale, in violation of Cal. Health & Safety Code § 11351, and for being a felon in possession of a firearm, in violation of Cal. Penal Code § 29800(a)(1).

2

On June 16, 2016, defendant sold a confidential informant (the "CI") approximately one ounce of methamphetamine and an AK-47-type firearm (which was also a ghost gun) during a recorded controlled purchase. During a recorded call between defendant and the CI following the controlled purchase, the CI asked defendant if the CI could buy more AK-47-type firearms, and defendant responded in the affirmative. Later that day, defendant messaged the address of his Granada Hills residence to the CI.

On October 18, 2016, defendant was charged in a single-count indictment in this case with distribution of at least 28 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii). (Dkt 1.)

On November 2, 2016, law enforcement arrested defendant on an arrest warrant from that indictment and searched his Granada Hills residence pursuant to a federal search warrant. Inside defendant's bedroom, law enforcement found: (1) approximately 6.62 grams of actual methamphetamine in two vials in a bag on a nightstand and on a shelf of the same nightstand; and (2) a .380 caliber semiautomatic pistol with no serial number and .380 auto caliber ammunition on a shelf. Inside another one of the rooms in the residence controlled by defendant, law enforcement found: (1) approximately 563 grams of actual methamphetamine in a plastic bag, (2) approximately 9.37 grams of cocaine in a plastic bag, (3) approximately 51.86 grams of heroin, a Compania Nationala 7.62 x 39 mm caliber short barreled AK-type semiautomatic pistol stored near the drugs, multiple rounds of 7.62 x 39 mm ammunition, an HS Produkt model XD .45 caliber semiautomatic pistol, multiple rounds of .45 Auto caliber ammunition, and various other kinds of ammunition.

On November 17, 2020, defendant was charged in a first superseding indictment in this case with additional charges for (1) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (2) possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (3) possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and (4) being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). (Dkt. 98.)

If convicted of these charges, defendant faces a mandatory minimum sentence of 15 years' imprisonment and a statutory maximum sentence of life imprisonment under the §§ 841(a)(1), (b)(1)(A) and § 924(c)(1)(A)(i) charges.

**III. CASE HISTORY**

**A.    2016-2017: Defendant Is Detained Pending Trial in 2016 and Pleads Guilty in 2017**

On November 2, 2016, defendant made his initial appearance in this case and was detained pending trial; the Court originally set trial for December 27, 2016, and trial originally needed to commence on or before January 11, 2017. (Dkt. 11.)

On December 6, 2016, the parties filed a stipulation and request to continue the trial date to May 9, 2017, and find the time period of December 27, 2016, to May 23, 2017, excludable under 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv) of the Speedy Trial Act; the Court granted the request and made those findings on December 7, 2016. (Dkts. 20, 22.)

On April 12, 2017, the parties entered into a plea agreement in this case. (Dkt. 35.) On April 20, 2017, defendant pled guilty

pursuant to the plea agreement and the Court set a sentencing hearing for July 13, 2017. (Dkt. 37.)

**B.    2017-2022: Defendant Withdraws from his Guilty Plea and a New Speedy Trial Clock Starts; the Court Continues the Trial and Makes Findings of Excludable Time**

On June 14, 2017, defendant and others were charged in a 12-count superseding indictment in the District of Nevada, in United States v. Palafox, et al., Case No. 1:16-cr-265-GMN (D. Nev.). Defendant was charged in that case with conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) ("RICO"), murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), (2), and using and carrying a firearm in the commission of murder, in violation of 18 U.S.C. § 924(j)(1), (2).  In June 2017, defendant was transferred on a writ to the District of Nevada and ordered detained in that case.

Pursuant to defendant's multiple requests and over the government's objections, the Court moved the sentencing hearing in this case to October 12, 2017. (Dkts. 43, 46, 52.)

On September 28, 2017, defendant moved to withdraw his guilty plea, arguing that he would not have pled guilty had he known he was going to be indicted in the Nevada case; the government opposed. (Dkts. 53, 57.)

On November 13, 2017, the Court granted defendant's motion to withdraw from his guilty plea. (Dkt. 64.) That order caused a new seventy-day period to begin under 18 U.S.C. § 3161(i), and therefore trial was required to commence on or before January 22, 2018. On November 16, 2017, upon defendant's knowing and voluntary oral Speedy Trial Act waiver, the Court set a tentative trial date of April 3, 2018, that was later continued as detailed below. (Dkt 65.)

1    On July 19, 2019, defendant's Nevada trial commenced. On

2    February 24, 2020, after a 77-day jury trial, defendant was acquitted

3    in the Nevada case.

4    **C.    2017-2025: Defendant Requests to Continue the Trial and the**
     **Court Makes Findings of Excludable Time**

5

6    During the entirety of this case, defendant has requested

7    continuances of the trial date and findings of excludable time under

8    18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv). The

9    Court granted all those requests and continued the trial from April

10   3, 2018, to the current trial date of July 29, 2025. (Dkts. 67, 74,

11   76, 81, 107, 192, 204, 217, 227, 235, 246.)

12   In each of those stipulations, defendant and his counsel

13   requested a continuance because "additional time [was] necessary to

14   confer with defendant, conduct and complete an independent

15   investigation of the case, conduct and complete additional legal

16   research including for potential pre-trial motions, review the

17   discovery and potential evidence in the case, and prepare for trial

18   in the event that a pretrial resolution does not occur." (See, e.g.,

19   Dkt. 75 at 4.) And, in the stipulations prior to defendant's February

20   2020 acquittal in the Nevada case, defendant and his counsel stated

21   that they would not be able to prepare for trial in this case while

22   the Nevada case was pending due to defendant's preparation for that

23   trial, which involved more serious charges and was estimated to take

24   much longer than the trial in this case. (See, e.g., id. at 3-4

25   ("[T]he parties in [the Nevada] case presently estimate that trial

26   will last at least eight to ten weeks . . . . Accordingly, defendant

27   and counsel for defendant represent that they will not have time or

28   ability to confer with one another concerning this case through fall

6

of 2019, in view of defendant's preparation for and trial in, the [Nevada] case.").)

### D. 2020-2022: Pandemic-Related Court Closures, Defendant Is Released on Bond, and Defendant Is Re-Detained

On March 13, 2020, the United States District Court for the Central District of California issued Amended General Order No. 20-02, titled "In Re: Coronavirus Public Emergency Order Concerning Jury Trials and Other Proceedings." Pursuant to that order, the Central District of California did not call jurors for criminal jury trials until April 13, 2020, and the time period of any trial continuance entered pursuant to that order was excluded under 18 U.S.C. § 3161(h)(7)(A). The Central District of California extended the period for which jurors were not summoned in General Order Nos. 20-05, 20-08, 20-09, 21-03, and 21-06 before ultimately re-commencing jury trials on June 7, 2021, pursuant to General Order No. 21-07.

On October 13, 2020, defendant filed a motion to be released pending trial, which the government opposed. (Dkts. 88, 91.) On February 4, 2021, the Court denied defendant's motion for pretrial release without prejudice. (Dkt. 118.) On March 19, 2021, defendant filed an amended application to be released pending trial, which the government opposed. (Dkts. 126, 136.) On April 13, 2021, the magistrate judge granted defendant's motion and he was released pending trial. (Dkts. 142, 150.)

On March 29, 2022, defendant made an initial appearance regarding the revocation of pretrial release and the magistrate judge again detained defendant pending trial. (Dkt. 173.)

**E.    2023-2025: Proceedings to Determine Defendant's Competency**

On January 11, 2023, defendant filed an unopposed motion to determine competency upon report pursuant to 18 U.S.C. § 4241, which the Court granted on January 13, 2023. (Dkts. 189, 191.)

On September 14, 2023, the Court held a hearing on defendant's competency after the issuance of the report. (Dkt. 222.) At the hearing, the government argued that defendant was competent as indicated by the report. Defendant argued that an additional neuropsychological evaluation, which differed from the evaluation that the BOP had performed to prepare the report, would reveal that defendant was not competent. (See Dkt. 220.) The Court ultimately did not make a final determination of defendant's competency at the hearing and granted defendant's request for a neuropsychological evaluation. (Dkt. 227.)

Because the BOP could not conduct the neuropsychological examination of defendant, defense counsel obtained an outside evaluator (Dr. Sherman) to conduct the evaluation.  Defense counsel is currently working with the BOP so that Dr. Sherman can conduct the evaluation. (Dkts. 238, 263.)

**IV.  DEFENDANT'S DUE PROCESS AND SPEEDY TRIAL RIGHTS HAVE NOT BEEN VIOLATED**

Under the Sixth Amendment, defendants have a "due process right to a speedy trial." Barker v. Wingo, 407 U.S. 514, 536 (1972); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."). The Ninth Circuit has held, however, that "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated." United States v. Nance,

666 F.2d 353, 360 (9th Cir. 1982); United States v. Baker, 63 F.3d
1478, 1497 (9th Cir. 1995) ("[T]he Speedy Trial Act affords greater
protection to a defendant's right to a speedy trial than is
guaranteed by the Sixth Amendment, and therefore a trial which
complies with the Act raises a strong presumption of compliance with
the Constitution.").

**A.    There Have Been No Speedy Trial Act Violations in this Case**

As detailed above, there have been no Speedy Trial Act
violations in this case. For purposes of the Speedy Trial Act,
defendant has been pending trial since November 13, 2017. (See Dkt.
64.) Although defendant made his initial appearance on November 2,
2016, he subsequently pled guilty and then moved to withdraw his
plea. (Dkts. 11, 37, 53.) For that reason, "the day the order
permitting withdrawal of the plea becomes final" is the day upon
which the Speedy Trial Act clock starts; here, that is November 13,
2017. See 18 U.S.C. § 3161(i); (Dkt. 64). Since then, the Court has
continued this case to July 29, 2025, and found the interim periods
to be excludable under the Speedy Trial Act.

Because there have been no Speedy Trial Act violations in this
case, there is a strong presumption of compliance with the Sixth
Amendment. Nevertheless, to evaluate whether a defendant has been
deprived of his Sixth Amendment right to a speedy trial, the Supreme
Court has adopted "a balancing test . . . in which the conduct of
both the prosecution and the defendant are weighed." Barker v.
Wingo, 407 U.S. 514, 530 (1972). Specifically, the Court has
identified four factors that are to be considered: (1) the length of
the delay; (2) the reason for the delay; (3) the defendant's
assertion of his right; and (4) the prejudice to the defendant. Id.

9

"[N]one of the four factors . . . [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  Id. at 533.

As defendant has been pending trial for approximately seven-and-a-half years, that is sufficient to meet the Barker threshold and trigger an inquiry into the three other factors. See United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008). But these "factors are related and 'must be considered together with such other circumstances as may be relevant.'" Mendoza, 530 F.3d at 762 (quoting Barker, 407 U.S. at 533).

An analysis of these factors makes clear that defendant's Speedy Trial and Due Process rights have not been violated.

**B.   Defendant Has Not Asserted his Speedy Trial Rights and Has Stipulated to the Continuances in this Case**

As an initial matter, defendant's Speedy Trial and Due Process rights have not been violated because (1) he has not asserted his Speedy Trial rights and (2) he has stipulated to all of the requests to continue the trial in this case.[1] See United States v. Carter, 754 F. App'x 534, 537 (9th Cir. 2018) (defendant "waived his right to object to any post-indictment delay under the Sixth Amendment's Speedy Trial Clause . . .  by stipulating to nearly all of the delay between his indictment and trial" (citing Barker v. Wingo, 407 U.S. 514, 529 (1972))); see also United States v. Turner, 926 F.2d 883, 889 (9th Cir. 1991) ("an improper or untimely assertion of speedy

---

[1] Defendant stipulated to the continuances both before and after the withdrawal of his guilty plea.

10

1  trial rights may weigh in favor of rejecting a defendant's motion to

2  dismiss for violation of these rights"); Lam, 251 F.3d at 859

3  ("[S]uccessive requests for continuances considerably diminish the

4  weight of [defendant's] assertions of his speedy trial right.").

5      **C.   The Delay in this Case Has Been Justified**

6      Defendant's Speedy Trial and Due Process rights have also not

7  been violated because the delay in this case has been justified.

8  Following the withdrawal of defendant's guilty plea in 2017,

9  defendant and his counsel requested each of the continuances of the

10 trial date from 2017 through 2025. As noted in the stipulations,

11 defendant and his counsel requested the continuances because his

12 counsel was unprepared to the try the case and his counsel

13 represented to the Court that he would have been ineffective had the

14 trials proceeded on the prior dates. Defendant and his counsel noted

15 in the stipulations between 2017 and 2020 that the request was in

16 part due to the trial preparation that defendant was doing for the

17 Nevada case. That Nevada case ultimately resulted in a 77-day trial

18 that concluded on February 24, 2020.

19     And, between March 2020 and June 2021, the Central District of

20 California also suspended jury trials in response to the COVID-19

21 pandemic. That suspension was upheld by the Ninth Circuit. United

22 States v. Olsen, 21 F.4th 1036, 1049 (9th Cir. 2022) ("The Central

23 District of California did not cast aside the Sixth Amendment when it

24 entered its emergency orders suspending jury trials based on

25 unprecedented public health and safety concerns. To the contrary, the

26 orders make clear that the decision to pause jury trials and exclude

27 time under the Speedy Trial Act was not made lightly. The orders

28 acknowledge the importance of the right to a speedy and public trial

both to criminal defendants and the broader public, and conclude

that, considering the continued public health and safety issues posed

by COVID-19, proceeding with such trials would risk the health and

safety of those involved, including prospective jurors, defendants,

attorneys, and court personnel.").

Additionally, since January 2023, defendant has been undergoing

competency proceedings and has not yet been found competent. That

time is also excluded under the Speedy Trial Act. See 18 U.S.C.

§ 3161(h)(1)(A) ("delay resulting from any proceeding, including any

examinations, to determine the mental competency or physical capacity

of the defendant").[2]

**D.   Defendant Has Not Been Prejudiced**

Finally, defendant's Speedy Trial and Due Process rights have

not been violated because the delay in this case has not prejudiced

him.

"The Supreme Court has recognized three forms of prejudice that

can result from post-indictment delay: (1) oppressive pretrial

incarceration, (2) anxiety and concern of the accused, and (3) 'the

possibility that the [accused's] defense will be impaired by dimming

memories and loss of exculpatory evidence.'" Mendoza, 530 F.3d at 764

(quoting Doggett, 505 U.S. at 654).

---

[2] Although some Circuits have ruled that the more time-specific
§ 3161(h)(1)(F) applies to time periods that are covered by
§ 3161(h)(1)(A), the Ninth Circuit has indicated that the presumption
of unreasonableness in § 3161(h)(1)(F) does not apply to time periods
covered by § 3161(h)(1)(A). See United States v. Antoine, 906 F.2d
1379, 1380 (9th Cir. 1990) (stating that "delay resulting from
transporting" less than ten days under § 3161(h)(1)(F) is excluded
"[i]n addition" to delay resulting from competency determinations
under § 3161(h)(1)(A)).

As an initial matter, defendant has not presented any evidence that he has suffered anxiety or concern that rises to level of prejudice.

Nor has defendant suffered oppressive pretrial incarceration. Defendant was initially detained pretrial for approximately four years from 2017 to 2021, but more than half of that time was due to defendant's Nevada case where he was also ordered detained pending trial. The magistrate judge in this District then released defendant on bond in 2021, and he is only currently in custody because he violated the conditions of his pretrial release in 2022. Although defendant has been in pretrial custody for a total of approximately six-and-a-half years, he is facing a 15-year mandatory minimum on the charges and a life maximum in this case.[3]

Finally, the passage of time has not impaired defendant's ability to present a defense. Although this type of potential prejudice is the "most serious" "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system," Doggett, 505 U.S. at 654, "it is also the most difficult to prove because 'time's erosion of exculpatory evidence and testimony can rarely be shown.'" Mendoza, 530 F.3d at 764 (quoting Doggett, 505 U.S. at 655) (omitting internal quotation marks).

---

[3] Defendant will likely also face a high Guidelines range if convicted. Under the original guilty plea before the first superseding indictment was filed in this case, defendant's Guidelines range in this case would likely have been around 235 to 293 months. Probation stated in the Pre-Plea Report that defendant's criminal history category is IV. (Dkt. 34 at 6.) And, under the original plea agreement, defendant agreed to an offense level of 38 (not including the 3-point reduction for acceptance of responsibility or other specific offense characteristics, adjustments, and departures) resulting in an offense level that would likely have been around 35. (Dkt. 35 at 10.)

1    Defendant has not and cannot show that the passage of time has

2    eroded exculpatory evidence or testimony. As discussed above, the

3    evidence in this case is straightforward. Defendant is charged with

4    selling drugs to a confidential informant and possessing drugs and

5    guns at his residence when it was searched by law enforcement. The

6    controlled buy by the confidential informant was recorded, as were

7    communications between defendant and the confidential informant. Law

8    enforcement photographed items that were seized from defendant's

9    residence. Finally, the laboratory tests of the drugs are not subject

10   to the erosion of time.

11   Accordingly, defendant has not been prejudiced by any post-

12   indictment delay and therefore there is no basis to dismiss the

13   superseding indictment in this case.

14   **V.    CONCLUSION**

15   For all the reasons stated above, defendant's Speedy Trial and

16   Due Process rights have not been violated and there is no basis to

17   dismiss the superseding indictment.

18

19

20

21

22

23

24

25

26

27

28